114

## 27396. ATLANTA TITLE AND TRUST COMPANY *v.* ALLIED MORTGAGE COMPANY.

DECIDED MAY 17, 1939.

*Tye, Thomson & Tye, R. A. Edmondson Jr.,* for plaintiff in error.

*W. L. Bryan,* contra.

SUTTON, J.   The Allied Mortgage Company sued the Atlanta Title and Trust Company for $1479.03 on a policy of title insurance issued by the defendant to the Security Mortgage Company, and duly transferred by that company to the plaintiff.   It was alleged in the petition as amended, that on November 17, 1933, the defendant issued to the Security Mortgage Company its policy of title ·insurance for the face amount of $14,000, by the terms of which it covenanted that it would indemnify, keep harmless, and guarantee the assured and all to whom this policy may be transferred against all loss or damage, not exceeding $14,000, which the party guaranteed shall sustain by reason of defect of title affecting the premises described in the policy, or by reason of liens or encumbrances charging the same at the date of this policy, subject to the conditions and stipulations in the policy; that it developed that the title to the premises covered by the policy was defective in that, before and at the time of the issuance of the policy, the premises were subject to two paving-assessment liens in favor of the City of Florence, Alabama, in the approximate sum of $1479.03; that these paving assessments were made on December 14, 1923, and were duly recorded; that said assessments were made by the city council of the City of Florence, Alabama, pursuant to its powers and authority under certain sections of the Code of Alabama which were in force at the time said assessments were made, said Code sections being specified and made a part of plaintiff's petition by reference, the assessments being for · public improvements pursuant to said Code sections; that it was provided by that Code, § 1381, that after notice and advertisement as required in said sections the owners of any real estate affected by the proposed assessment would have the right to file objections and

resist the same, such objections to be filed within a period of twenty days after the proposed assessment was made; that no such objection had been filed, and pursuant to the provisions of said section of the Code the assessment became a lien against the said property, with all the force and effect of a final judgment, upon the expiration of the twenty-day period; that said sections provided for the peremptory sale of the property in settlement of said liens, and the said liens were satisfied for the reason that they stood in default, and on or about the —— day of October, 1934, plaintiff had been advised by the clerk of the said city that said property would be sold if the lien was not satisfied, and the property was subject at all times to the hazard of an immediate sale on account of said liens, for the purpose of satisfying the same; that plaintiff paid off said liens for the purpose of clearing the title and enabling it to be in position to dispose of the property to advantage; that said sum of $1479.03 so paid represents a loss to the plaintiff, for which it has not been reimbursed and against which it was indemnified by the defendant; that originally the Long Realty Company executed a mortgage to the Security Mortgage Company on the said property for the principal sum of $14,000, dated the first day of November, 1933, and recorded in volume 235, pages 417 to 419, of the mortgage records of Lauderdale County, Alabama; that on October 10, 1934, this mortgage was assigned for value received by the Security Mortgage Company to the Allied Mortgage Company, and the said assignment was recorded in volume 248, page 465, of the mortgage records of said county; that the Allied Mortgage Company paid to the Security Mortgage Company the full amount of said mortgage in consideration of its transfer and assignment by delivering to the Security Mortgage Company the equivalent amount of bonds of the Security Mortgage Company then held by the Allied Mortgage Company; that on October 7, 1935, the realty covered by the said mortgage was sold to Bramlett Tulman O'Steen for $10,000, and the plaintiff has not been reimbursed for said payment of said lien, and has no means of collecting it out of the mortgagor or otherwise; that the mortgage so acquired and executed by Long Realty Company, heretofore referred to, was of the actual value of $10,000, taking into consideration the value of the realty which secured the same; that the effect of the imposition of this undisclosed street assessment was

to diminish the value of the mortgage in the amount of the street assessment which was $1479.03; that the Long Realty Company has not paid the mortgage, and is insolvent, and the plaintiff has been and is unable to collect the residue on the mortgage, or the amount paid on the lien, out of the Long Realty Company, and therefore the payment by the plaintiff of the lien operated as a direct loss to plaintiff in the amount of the lien; that the City of Florence, Alabama, had been placed in the hands of a Federal court receivership by Judge W. I. Grubb, Judge of the United States Court for the Northern District of Alabama, and orders had been issued requiring the payment of the said liens under penalty of sale of the lands; that the clerk of the City of Florence was acting under advice from said receiver when he made demand for the payment of the assessment as above referred to; that on July 15, 1936, and on other dates theretofore, the plaintiff made demand on the defendant for the payment of said amounts, which payment was refused by the defendant; that before the date of the issuance of said policy the defendant was advised and had notice of the issuance of the aforesaid liens; that the street assessments heretofore referred to were purely in rem, and operated solely against the property against which they were assessed, and no in personam right of subrogation existed at any time by virtue of said street assessments.

The defendant demurred to the petition as amended, and the exception is to the overruling of the demurrer. The grounds of the demurrer are stated and dealt with in the following opinion.

1. It is contended by the defendant that it does not appear from the petition that the defendant was notified in writing that any action or proceeding had ever been instituted which was founded upon a claim of title, encumbrance or defect that existed or is claimed to have existed prior to the date of the policy, or that the plaintiff gave to the defendant any notice before it paid off the paving assessment; that this was a failure to comply with the terms of the policy, and consequently the plaintiff is not entitled to prosecute this suit. It is true that the policy provides: "1. The Atlanta Title & Trust Company shall at its own cost and charges defend the party guaranteed in all actions of ejectment or other action or proceeding founded upon a claim of title, encumbrance, or defect which existed or is claimed to have existed prior to date

of this policy, and not excepted herein; reserving, however, the option of settling the claim or paying this policy in full; and the payment or tender of payment to the full amount of this policy shall determine all liability of this company thereunder. In case such action or proceeding shall be begun, it shall be the duty of the party guaranteed to notify the company thereof in writing, and secure to it, when practicable, the right to defend such action or proceeding, and to give all reasonable assistance therein. If such notice shall not be given to the company within thirty days after the first service in such action or proceeding, then all liability of this company in regard to the subject-matter of such suit shall cease and be determined; provided, however, that the failure to give notice shall not prejudice the claim of any one who has no knowledge of such action or proceeding. 2. Whenever the company shall have settled a claim under this policy, it shall be entitled to all rights and remedies which the party guaranteed would have had against any other person or property in respect to such claim had this policy not been made, and the party guaranteed undertakes to transfer to this company such rights, and permit it to use the name of the party guaranteed for the recovery thereof. Any net sum collected on such rights over and above the amount of loss paid by said company, shall belong, and on demand shall be paid, to the party guaranteed. The party guaranteed warrants that such rights of subrogation shall vest in the company unaffected by any act of the party guaranteed." The purpose of a notice of an action or proceeding to the title company would be to give it the opportunity to prepare a defense and defend the party or property guaranteed against such action or proceeding until liability thereon was legally fixed. The paving assessments in the present case were made by the City of Florence, Alabama, under the provisions of the Code of Alabama, after due notice, and had become a valid and binding lien against the property guaranteed, with the force and effect of a judgment, and the time for filing objections thereto had long since elapsed. So it appears that legal liability against the property guaranteed became fixed, and a notice from the mortgage company to the title company of said assessments, after the time for filing objections thereto had expired, would have been of no benefit to the title company, and would have served no valid purpose. Failure on the part of the mort-

gage company to give such notice was not harmful to the title company, and would not preclude the plaintiff from prosecuting this suit against the title company, after it had paid off the assessments against the property guaranteed. Furthermore, it was alleged that the title company had notice of the assessment liens before it issued the title policy sued on.

The case of *Atlanta Title & Trust Co.* v. *Ful-Kalb Inc.*, 56 *Ga. App.* 742 (193 S. E. 796), is distinguishable on its facts from the present case. There the Ful-Kalb Inc. refused to permit the title company to defend the action or to furnish counsel, for the reason that it was contrary to law and against public policy; and that was held to be a breach of the contract that would prevent the plaintiff from recovering against the title company. No legal liability there, when that was done, had become fixed against the property guaranteed, as it had in the case at bar when the plaintiff paid off the assessments in question. Neither is American Surety Co. *v.* Ballman, 115 Fed. 292 (2), in point. There a judgment of the trial court, which had been appealed, was paid by the surety company without the consent of the indemnitor before the case was heard by the appellate court; and it was held that such payment discharged the indemnitor, as it had the right under the terms of the policy to prosecute the case to a final judgment in the appellate court.

2. The defendant further demurred on the ground that it was not alleged that the plaintiff had suffered any loss by reason of the existence of such lien because of plaintiff's inability to collect the amount of said lien from the person primarily liable for the payment of the lien. The principal amount of the mortgage made by the Long Realty Company to the Security Mortgage Company, and transferred by the latter company to the plaintiff, was $14,000. It is alleged in the petition as amended that the plaintiff paid the Security Mortgage Company the full amount of this mortgage, in consideration of its transfer, by delivering to it the equivalent amount of bonds of said Security Mortgage Company then held by the plaintiff; that the realty covered by the mortgage was sold the next year for $10,000, and the actual value of the mortgage was $10,000; that the assessment lien of $1479.03 was paid by the plaintiff, and was a loss to it in said sum, for which it had not been reimbursed and against which it was indemnified by the defend-

ant; that the original mortgagor was insolvent, and the plaintiff had been and was unable to collect the residue on said mortgage, or the amount paid on the assessment lien, out of the mortgagor, and the payment of said lien operated as a direct loss in the amount of the lien to the plaintiff. These allegations were sufficient, against the demurrer, to show the loss sustained by the plaintiff by reason of its having paid the lien against the property, the title to which was insured by the defendant.

3. The demurrer on the ground that the plaintiff paid off the lien against the property without taking a transfer thereof, which it is claimed destroyed the defendant's right of subrogation under the terms of the title policy, is without merit. It was alleged in the petition that the assessment lien was in rem and operated solely against the property, and no right of subrogation existed at any time by virtue of the street assessment; and besides, it was alleged that the property had been sold for less than the amount of the mortgage, and that the original mortgagor was insolvent. So it does not appear that the defendant's rights were harmed by the action of the plaintiff in this respect.

4. The contention of the defendant that the payment of the lien was a voluntary payment of taxes and could not·be recovered by the plaintiff is without merit. Under the terms of the title policy, the plaintiff was indemnified· against any loss or damage on account of defective title or liens against the property guaranteed. The. court properly overruled the defendant's demurrer to the petition as amended.

*Judgment affirmed. Stephens, P. J., and Felton, J., concur.*